UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                 :

                                                     10 Cr. 336 (LAK)

           -v.-                              :

CHAD ELIE and                            :
JOHN CAMPOS,

                                :

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM

                                             PREET BHARARA
                                             United States Attorney for the
                                             Southern District of New York
                                             One St. Andrew's Plaza
                                             New York, New York 10007

ARLO DEVLIN-BROWN
NIKETH VELAMOOR
Assistant United States Attorneys
      -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA                        :

                    -v.-                        :

CHAD ELIE and                                   :
JOHN CAMPOS,

                                      :

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10 Cr. 336 (LAK)

### GOVERNMENT'S SUPPLEMENTAL MEMORANDUM

The United States of America, by its attorney, Preet Bharara, United States Attorney for

the Southern District of New York, Arlo Devlin-Brown and Niketh Velamoor, of counsel,

respectfully submit this supplemental memorandum in connection with the motions to dismiss

Superseding Indictment S3 10 Cr. 336 (LAK) (the "Indictment") filed by defendants Chad Elie

("Elie") and John Campos ("Campos") (collectively, "defendants").

On January 26, 2012, the Court issued an order directing the parties to submit briefing

"addressing the implications, if any, of the Department of Justice Office of Legal Counsel's

["OLC"] recent opinion, *Whether Proposals by Illinois and New York to Use the Internet and*

*Out-of-State Transaction Processors to Sell Lottery Tickets to In-State Adults Violate the Wire*

*Act*, available at http://www.justice.gov/olc/opinions.htm [the "Opinion"], for this case and

particularly the pending motions to dismiss the indictment." For the reasons set forth below, the

Government submits that the Opinion is not relevant to the Court's analysis of the pending

motions and has no other meaningful implications for this case.

## BACKGROUND

The application of the Wire Act to non-sports gambling has long been unsettled. The

statute reads in pertinent part as follow:

> Whoever being engaged in the business of betting or
> wagering knowingly uses a wire communication facility for the
> transmission in interstate or foreign commerce of bets or wagers or
> information assisting in the placing of bets or wagers **on any
> sporting event or contest**, or for the transmission of a wire
> communication which entitles the recipient to receive money or
> credit as a result of bets or wagers, or for information assisting in
> the placing of bets or wagers, shall be fined under this title or
> imprisoned not more than two years, or both.

18 U.S.C. § 1084(a) (emphasis added).   It is not clear from the face of the statute whether the

use of the phrase "on any sporting event or contest" modifies each instance of "bets or wagers"

in the subsection or whether it modifies only the instance it directly follows.  The highest court to

address the issue has held that the phrase any sporting event or contest" modifies "bets or

wagers" throughout the statute, meaning that the Wire Act applies only to sportsbetting rather

than other forms of gambling.  *See  In re MasterCard Intern. Inc.*, 313 F.3d 257 (5th Cir. 2002)

(affirming dismissal of Wire Act claims brought by credit card users seeking to recover money

they had bet using internet casinos).  *But see United States* v. *Lombardo*, 639 F. Supp. 2d 1271,

1280 (D. Utah. 2007) (agreeing with the DOJ's former position that "any sporting event or

contest" modifies only the first clause).   As a result of this uncertainty, as noted in the

Government's Memorandum in Opposition to Defendants Motions To Dismiss, the Wire Act

(the "Opposition")  "is typically charged in connection with bookmaking operations"

(Opposition at 36) [1] and indeed has not been charged here.

---

[1]     One exception of note is negotiated plea agreements, in which defendants sometimes
seek  to plead guilty to the Wire Wager Act rather than, for example, the Illegal Gambling
Businesses Act, 18 U.S.C. § 1955, because the Wire Wager Act carries only a two year statutory

The OLC Opinion was drafted to address "the lawfulness of proposals by Illinois and New York to use the Internet and out-of-state transaction processors to sell lottery tickets to in-state adults." (Opinion at 1.)   Specifically, the Opinion addresses whether the Wire Act, 18 U.S.C. § 1084 (2006), and the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. §§ 5361-5367 (2006), "prohibit a state-run lottery from using the Internet to sell tickets to in-state adults where the transmission using the Internet crosses state lines, and whether these statutes prohibit a state lottery from transmitting lottery data associated with in-state ticket sales to an out-of-state transaction processor either during or after the purchasing process." (*Id.*)

The question arose because of a potential conflict between the Wire Act and the UIGEA on whether federal law prohibits states from conducting in-state lottery transactions via the Internet if the transmissions over the Internet during the transaction cross state lines.  As the Opinion explains, it is possible to interpret the Wire Act as prohibiting such transmissions, whereas the UIGEA appears to permit intermediate out-of-state routing of electronic data associated with internet gambling offered exclusively to those present in the state and in compliance with the laws of the state.  (Opinion at 1-2).  Therefore, the Opinion was needed to clarify the legality of the proposed state-run lotteries, which in practice would involve incidental interstate Internet transmissions.

Ultimately, however, the Opinion does not resolve this potential conflict and, in fact, does not analyze, or draw any conclusions about, the UIGEA, the Illegal Gambling Businesses Act of 1970 ("IGBA"), 18 U.S.C. § 1955, or any other statute at issue in the defendants' motions.  Rather, the Opinion determines that the proposed lotteries are lawful based on its conclusion about the scope of the Wire Act, and specifically its conclusion that the Wire Act

---

maximum and is sometimes viewed as being more favorable in terms of collateral immigration consequences.

applies only to sports betting and not lotteries.  *See* Opinion at 1 ("[I]nterstate transmissions of

wire communications that do not relate to a 'sporting event or contest,'…fall outside of the reach

of the Wire Act.") (quoting 18 U.S.C. § 1084(a)).  Given this conclusion, the Opinion did not

find it "necessary to address to address the Wire Act's interaction with UIGEA, or to analyze

UIGEA in any other respect."  (Opinion at 2.)

## DISCUSSION

The Opinion is not relevant to the pending motions to dismiss or the trial of this case.

First, and most fundamentally, the Opinion is exclusively addressed to the reach of a

federal gambling statute that is not charged in this case.  The Indictment charges the defendants

with two other gambling statutes – IGBA and UIGEA – that the Opinion simply does not

address.

Second, the analysis set forth in the Opinion has no relevance to the interpretation of

IGBA or UIGEA.  The ambiguity of the Wire Act is based almost entirely on the fact that the

punctuation used in the statute makes it unclear on its face whether "any sporting event or

contest" modifies the entire subsection or only one particular clause.  Opinion at 5.  Accordingly,

the OLC turned to logic, noting that it is "difficult to discern" why Congress would have

intended one clause of the statute to apply only to sports betting and a related clause to all forms

of betting, concluding that "[t]he more reasonable inference is that Congress intended the Wire

Act's prohibitions to be parallel in scope, prohibiting the use of wire communication facilities to

transmit both bets or wagers *and* betting or wagering information on sporting events or contests."

Opinion at 5.  The OLC also drew upon unambiguous legislative history supporting the

conclusion that the phrase "any sporting event or contest" modified both clauses of the statute.

The OLC's analysis – even assuming that the Court found it persuasive with respect to the Wire

Act – simply has no application to IGBA or UIGEA, which are structured differently and do not suffer from the same facial ambiguities caused by syntax and punctuation.[2]

Third, the policy changes that flow from the Opinion are of no benefit to those offering internet poker in a manner that violates state gambling law, as is alleged in the Indictment. The effect of the Opinion is that an internet gambling company that offers lotteries (and by the OLC's reasoning, other non-sports gambling)  solely to residents of a particular state, and in compliance with the state's own gambling statutes, will not be prosecuted under the Wire Act merely because incidental wire transmissions stray across state lines. In other words, at least outside of the context of sports betting, the determination of what forms of internet gambling to outlaw and what forms of gambling to legalize and regulate within the borders of a state will primarily be one for the states, as it historically has been with respect to brick and mortar gambling.  Indeed, various states are exploring, as they have been for several years, legislation which would decriminalize and regulate certain forms of internet gambling offered to state residents. The conduct alleged in this case, however – the operation of unregulated and indeed in at least some cases dishonest internet gambling businesses throughout the United States, in violation of state gambling law – was and still remains entirely unlawful.

---

[2]     To the extent that the Opinion has any significance to the issues currently before the Court, it does further illustrate a point previously made by the Government. In their motions, the defendants argue that the UIGEA applies only to businesses that bet against their customers because it includes the phrase "the business of betting and wagering."  According to the defendants, various cases have construed this phrase in the context of the Wire Act as applying only to businesses that bet against their customers. In response, the Government argued, among other things, that even if the defendants' interpretation of this language is correct in the context of the Wire Act (which the Government does not concede), it has little bearing in the context of the UIGEA, given that the Wire Act is typically only charged (and arguably only applied) to sports betting establishments that, by their nature, bet against their customers. *See* Opposition at 35. By expressly concluding that the Wire Act applies only to sports betting, the Opinion reinforces the Government's argument that the term "business of betting and wagering" as used in the Wire Act applies more broadly to a statute not limited to sports betting.

## CONCLUSION

For the reasons set forth above, and those previously set forth on the record, the Government requests that the Court deny the defendants' motions to dismiss in their entirety.

Respectfully submitted,

PREET BHARARA
United States Attorney

By:     /s/
Arlo Devlin-Brown
Niketh Velamoor
Assistant United States Attorneys
Tel.: (212) 637-2506/1076

**Certificate of Service**                                            **Filed Electronically**

The undersigned attorney, duly admitted to practice before this Court, hereby certifies that on the below date, he/she served or caused to be served the following document(s) in the manner indicated:

**Government's Response to Defendant's Pre-Trial Motions**

Service via Clerk's Notice of Electronic Filing upon the following attorneys, who are Filing Users in this case:

Barry Berke, Esq.
Fred Hafetz, Esq.
Neil Kaplan, Esq.

Service via e-mail upon the following attorneys who are not Filing Users in this case and who have previously given their written consent to service via e-mail:

N/A

Service via overnight courier; U.S. Mail; etc. upon the following attorneys who are not Filing Users in this case

N/A

Dated: New York, New York
       February 6, 2012

                                        PREET BHARARA
                                        United States Attorney

                              By:  /s/  Arlo Devlin Brown
                                    Arlo Devlin-Brown
                                    Assistant United States Attorney
                                    Tel.: (212) 637-2506